AO 106 (Rev. 04/10) Application for a Search Warrant

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ABINGDON, VA
FILED

# UNITED STATES DISTRICT COURT

SEP 27 2022

for the

Western District of Virginia

LAURA A. AUSTIN, CLERK
BY: *C. Meade*
DEPUTY CLERK

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Information associated with Meta Platforms, Inc. user
I.D. "www.facebook.com/doobie.stoned.3" stored at
premises controlled by Meta Platforms, Inc.

)
)
)
)
)
)

Case No. 2:22mj 21

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846,
21 USC 841(a)(1) | Conspiracy to Possess with Intent to Distribute Methamphetamine. |

The application is based on these facts:

See Attachment C.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

ATF Special Agent Stephen Levesque
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/27/22

*Judge's signature*

City and state: Abingdon, Virginia

Pamela Meade Sargent, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Stephen Levesque, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain Meta Platforms, Inc., Facebook user I.D. www.facebook.com/doobie.stoned.3, that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. (formerly known as "Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platforms, Inc. to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.  I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since 2007. I received my training with the Federal Law Enforcement Training Center (FLETC) and ATF National Academy in Brunswick, Georgia. I have a Bachelor of Science Degree in Criminal Justice from Radford University and a Master of Science Degree in Criminal Justice and Police Studies from Eastern Kentucky University. I have successfully completed a basic law enforcement academy with the Newport News Virginia Police Department. As a Special Agent, I have participated in numerous investigations involving the seizure of various controlled substances, records related to narcotics distribution, and other types of evidence documenting criminal organizations' activities in both manufacturing and

distributing controlled substances. I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, confidential informants, and cooperating sources.

3.  Based on my training and experience, I have become familiar with methods used by drug traffickers to smuggle and safeguard narcotics, distribute narcotics, and collect and launder proceeds. The affiant is aware of the sophisticated tactics drug traffickers routinely use to attempt to thwart detection by law enforcement, which includes using numerous different cellular telephones, counter surveillance, elaborately planned distribution schemes, false or fictitious identities, and coded communications and conversations.

4.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 846 and 841(a)(1) (conspiracy to possess with the intent to distribute methamphetamine) have been committed by Billy KING and others. There is also probable cause to search the information described in Attachment A for evidence of this crime and contraband or fruits of this crime, as described in Attachment B.

**PROBABLE CAUSE**

1. On May 12, 2022, agents from the Southwest Virginia Drug Task Force (DTF), utilizing an undercover (UC) agent[1], executed a controlled narcotics purchase from Billy KING and Billie MCGUIRE in Lee County, VA. Lee County is in the Western District of Virginia. The controlled narcotics purchase was video and audio recorded. KING sold the UC agent two ounces of Crystal Methamphetamine (ICE) and eight grams of Heroin. A state lab later analyzed and confirmed the substance to be 51.38 grams of material found to contain Methamphetamine, and 8.3 grams of a material found to contain HEROIN.

2. On June 2, 2022, agents from the Southwest Virginia DTF, utilizing the same UC agent, executed a second controlled narcotics and firearm purchase from Billy KING in Lee County, VA. The controlled narcotics purchase was video, and audio recorded. On this occasion, KING sold the UC agent two ounces of ICE and four firearms, including one revolver and three rifles. Agents later determined the revolver KING sold the UC agent had been reported stolen in May 2022 from a UPS shipping facility in Knoxville, TN.

3. On June 14, 2022, using open-source research, your affiant identified a Facebook account associated with Billy KING, www.facebook.com/doobie.stoned.3 with a public facing username, "Doobie Stoned." Your affiant knows that Billy KING's nickname is "Doobie." The subject Facebook account contains a photo of Billy KING on the front page of the account. The profile states the account user lives in Knoxville, TN and is married to Billie McGuire. This affiant knows Billy KING lives in Knoxville, TN and is

---

[1] The UC assigned to the Southwest Virginia Drug Task Force is identified by his initials LM. LM's full identification is protected in this affidavit so as not to reveal information that may jeopardize ongoing investigative activity.

married to Billie MCGUIRE.  The affiant sent a preservation request to Meta Platforms, Inc. to preserve data associated with Facebook account www.facebook.com/doobie.stoned.3.



4. From July 25-26, 2022, a CI contacted KING using Facebook Messenger (audio voice calls and messages) attempting to set up a controlled narcotics purchase from KING.  The CI told KING the drugs were for his friend again (referring to the UC agent) to whom KING had sold controlled narcotics twice previously.  The CI and KING had multiple conversations through Facebook (audio calls), setting up the purchase.  At approximately 1:12 p.m., the CI called KING using Facebook Messenger's voice call feature.  The phone call was recorded by DTF agents.  Billie MCGUIRE answered the call.  The CI said his friend, referring to the UC agent, would purchase two ounces of "Boi" as long as they (KING and MCGUIRE) would bring at least one ounce of "Clear."  "Boi" is a slang term for Heroin, and "Clear" is a slang term for Crystal Methamphetamine (ICE.)  MCGUIRE responded by saying, "*Possibly, yeah*." In the call background, KING said he needed his supplier to "front" the drugs to him.  KING said he could not get the drugs in advance without paying for them (on front), and that his supplier did not trust him

anymore. The CI then suggested that KING bring his suppliers because his friend (UC agent) was loaded with money. After several conversations using Facebook's voice calling KING agreed to drive to Jonesville, VA to sell the UC agent two ounces of Heroin and one ounce of ICE.

5. On July 26, 2022, agents from the Southwest Virginia DTF, utilizing the same UC agent, executed a controlled narcotics purchase from Billy KING in Lee County, VA. The controlled narcotics purchase was video and audio recorded. KING arrived at the designated meeting point with three additional individuals in his vehicle, later identified as Billie MCGUIRE, Robert WARR and Robert JENKINS. KING sold the UC agent two ounces of Heroin and one ounce of ICE. KING, MCGUIRE, WARR and JENKINS were each arrested following the controlled purchase.

6. A DEA forensic laboratory later analyzed and confirmed the suspected ounce of ICE, purchased from KING on July 26, 2022 to be 27.72 grams of a substance identified as Methamphetamine Hydrochloride. The substance had a purity level of 76%. At the time of this affidavit, laboratory results have not been received for the suspected Heroin.

7. Meta Platforms, Inc. owns and operates a free-access social networking website called Facebook that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts on various Meta Platforms, Inc. Facebook allows users to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

8. Facebook asks users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook password, security

questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

9. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).

10. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, Facebook records such as profile contact information, private messaging logs, status updates, and tagged photos can indicate who has used or controlled the Facebook account at a relevant time.

11. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

12. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta Platforms, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in

Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

13.  Based on the forgoing, I request this Court issue the proposed search warrant.

14.  This Court, the United States District Court for the Western District of Virginia, has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

15.  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Meta Platforms, Inc.  Because the warrant will be served on Meta Platforms, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Special Agent Stephen Levesque
Bureau of Alcohol, Tobacco, Firearms, and
Explosives
United States Department of Justice


Subscribed and sworn to before me on _____Sept. 27_____, 2022.

PAMELA MEADE SARGENT
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID

www.facebook.com/doobie.stoned.3, that is stored at premises owned, maintained, controlled, or

operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Meta Platforms, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc., regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta Platforms, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta Platforms, Inc. is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)      All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Meta Platforms, Inc. activities from January 1, 2022, to September 25, 2022.

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from January 1, 2022, to September 25, 2022, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Meta Platforms, Inc. user identification numbers; groups and

networks of which the user is a member, including the groups' Meta Platforms, Inc. group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Meta Platforms, Inc. applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from January 1, 2022, to September 25, 2022, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non- Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account January 1, 2022, to September 25, 2022;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

    (o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

    (p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

    (q)     All records pertaining to communications between Meta Platforms, Inc. and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta Platforms, Inc. is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**II.    Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 846 (conspiracy to possess with the intent to distribute methamphetamine) involving Billy KING between January 1, 2022, to September 25, 2022, including, for the user ID identified on Attachment A, information pertaining to the following matters:

    (a) The sale of illegal drugs;

    (b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).